## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**AWOKE GEBRETSADIKE**,

     *Plaintiff,*

**v.**

                                        **Case No. 1:23-cv-03198-RCL**

**DISTRICT OF COLUMBIA**, *et al.*,

     *Defendants.*

## <u>MEMORANDUM OPINION</u>

Plaintiff Awoke Gebretsadike, representing himself, is an immigrant from Ethiopia and a former taxi driver licensed by the District of Columbia. He raises twenty-two statutory, constitutional, and tort claims against the District and its officers, employees of the Department of For-Hire Vehicles ("DFHV"). He alleges that the defendants refused to resolve an issue locking him out of his taximeter, seized his taxi license without due process, and repeatedly harassed him—all motivated by bias against Mr. Gebretsadike's national origin, an institutional policy of favoring rideshare services over taxicabs, and a desire to retaliate against Mr. Gebretsadike for his other pending lawsuit against the District. Before the Court is the defendants' motion to dismiss or, in the alternative, for partial summary judgment. Defs.' Mot. to Dismiss 1, ECF No. 14.

For the following reasons, the Court will **GRANT** the defendants' motion. Specifically, the Court will **GRANT** summary judgment to the District on Counts Sixteen through Twenty-Two and will **GRANT** defendants' motion to dismiss all remaining claims. Counts One through Fifteen will be **DISMISSED** for failure to state a claim upon which relief can be granted.

# I. BACKGROUND

Mr. Gebretsadike is an immigrant from Ethiopia, a resident of the District of Columbia, and a taxi driver by trade. Am. Compl. ¶ 1, ECF No. 13. In "the beginning of 2022," he started to have trouble with his Digital Taxicab Solution ("DTS") system, a digital taximeter and payment system used in District taxicabs. *Id.* ¶ 5. Unable to login to the device, he was left incapable of accepting fares. *Id.* Mr. Gebretsadike informed the DTS provider of the issue, but that did not resolve the problem. *Id.* ¶¶ 8–9. Seeking help, Mr. Gebretsadike next went to the DFHV office several times. *Id.* ¶ 10. During these visits, he allegedly experienced "national origin slurs, discrimination animus, and threat[s] to make [him] out of work" and was denied contact with those responsible for managing the DTS system. *Id.* At some point, Mr. Gebretsadike wrote to then-director of the DFHV David Do requesting his assistance. *Id.* ¶¶ 11–12. On April 14, 2022, Mr. Do replied that he would look into it, but Mr. Gebretsadike received no further updates. *Id.* ¶¶ 12–13. Nonetheless, Mr. Gebretsadike continued to operate his taxicab without use of the DTS and was supposedly issued "several bogus tickets" by DFHV employees. *Id.* ¶ 20.

On June 20, 2023, after taking his taxi off duty for the day, Mr. Gebretsadike allegedly encountered DFHV employee and defendant Kareem Campbell. *Id.* ¶¶ 17, 25. Mr. Campbell, apparently aware of Mr. Gebretsadike's DTS problem, "exert[ed] animus and thr[ew] typical national origin slur[s]" toward him. *Id.* ¶¶ 18–19. Mr. Campbell seized Mr. Gebretsadike's taxi and registration, apparently for operating without a functioning DTS. *Id.* ¶¶ 19–20. Mr. Gebretsadike then informed "DFHV leadership" of the impoundment, at which point they

"request[ed] [him] for revocation proceedings."[1] *Id.* ¶ 21. These proceedings apparently "later failed." *Id.*

Ultimately, Mr. Gebretsadike alleges he was locked out of the DTS system for approximately one and a half years. *Id.* ¶ 30. He also asserts he has suffered "tremendous stress" from the uncertainty caused by "nationalist[]" District employees' "discriminatory and unconstitutional practices." *Id.* ¶¶ 14, 16. These actions were allegedly motivated by animus toward Mr. Gebretsadike's national origin, bias against taxi drivers, and a desire to retaliate against Mr. Gebretsadike for his complaints regarding pandemic unemployment assistance and his prior lawsuit. *Id.* ¶¶ 16, 29. [2] [3]

In a letter dated August 12, 2022 and addressed to the District's Office of Risk Management, Mr. Gebretsadike purported to give the District notice of his claims.[4] *See* Gebretsadike Letter, Ex. B to Pl.'s Opp'n to MTD, ECF No. 19-1. In September 2023, Mr. Gebretsadike filed his complaint in the Superior Court of the District of Columbia. Compl. 1, ECF No. 1-1. He sued the District of Columbia as well as Dory Peter, Interim Director of DFHV; Mr. Campbell; Brian Schwalb, Attorney General of D.C.; and Jed Ross, Chief Risk Officer of D.C. *Id.*

---

[1] *See* D.C. Code § 50–331(e) (2024) (requiring an impoundment hearing within three days of the Mayor's receipt of a written request).

[2] Mr. Gebretsadike's other pending suit raised seven statutory and constitutional claims against the District for alleged discrimination in its disbursement of unemployment assistance during the COVID-19 pandemic. *See Gebretsadike v. District of Columbia*, No. 1:22-cv-1951 (RCL), 2023 WL 2708822, at *1–2 (D.D.C. Mar. 30, 2023). The Court dismissed all but one of these counts for failure to state a claim or lack of subject-matter jurisdiction. *Id.* Discovery is ongoing.

[3] The Amended Complaint is ambiguous on whether the District retaliated against Mr. Gebretsadike for his complaints to DFHV or his complaints to the Department of Employment Services relating to his unemployment assistance. The Amended Complaint simply states that "Plaintiff engaged in statutorily protected activities by opposing treatment by District of Columbia employees that he reasonably believed constituted unlawful discrimination perpetuated by District of Columbia employees and complained about it." Am. Compl. 23. But Mr. Gebretsadike nowhere alleges that he complained of unlawful discrimination to DFHV. He has since indicated that he had in mind his complaints and lawsuit about not receiving pandemic unemployment assistance. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss 20, ECF No. 19. Since Mr. Gebretsadike is a pro se plaintiff, the Court will construe his Amended Complaint liberally to refer to his complaints concerning unemployment assistance.

[4] The parties disagree about whether Mr. Gebretsadike actually mailed this letter. *See infra* note 7.

As the complaint raised federal questions, the defendants then removed the case to the United States District Court for the District of Columbia. Defs.' Notice of Removal 1–2, ECF No. 1. As amended, the complaint raises twenty-two claims, which can be divided into constitutional, statutory, and common law tort counts. After Mr. Gebretsadike amended his complaint, Defendants moved to dismiss all counts for failure to state a claim and, in the alternative, for partial summary judgment on the statutory and tort claims. Mot. to Dismiss 1. Mr. Gebretsadike filed an opposition. Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 19. Defendants filed a reply. Defs.' Reply, ECF No. 21.

The case was initially assigned to another judge of this district. But in light of Mr. Gebretsadike's other pending civil action against the District, *see Gebretsadike v. District of Columbia*, No. 1:22-cv-1951 (RCL), 2023 WL 2708822 (D.D.C. Mar. 30, 2023), this case was transferred to this Court pursuant to LCvR 40.5(a)(3) and (c)(2). *See* Notice of Related Case 1–2, ECF No. 22.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss (Rule 12(b)(6))

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling upon a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### B. Motions for Summary Judgment (Rule 56(a))

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The movant bears the burden of "identifying those portions of the record it believes 'demonstrate the absence of a genuine issue of material fact.'" *White v. Wash. Nursing Facility*, 206 F. Supp. 3d 137, 143 (D.D.C. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Once the movant has made an "adequate showing that a fact cannot be disputed, the burden then shifts to the party opposing summary judgment to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250). Summary judgment

is also proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (quoting *Celotex*, 477 U.S. at 322).

A party asserting that a fact cannot be genuinely disputed, or that a fact is genuinely disputed, must support that assertion by either (a) "citing to particular parts of materials in the record," or (b) "showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in their favor. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). The party opposing summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Finally, in assessing summary judgment, a court may not make credibility determinations or weigh evidence. *Id*. at 255.

### C.  Filings by *Pro Se* Parties

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). "However, even though a *pro se* complaint must be liberally construed, the complaint must nonetheless present a claim on which the court can grant relief." *Williams v. Bank of New York Mellon*, 169 F. Supp. 3d 119, 124 (D.D.C. 2016) (internal quotation marks and citation omitted). That is, a pro se plaintiff is not exempt from the requirements of the federal rules. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009).

### III. DISCUSSION

To begin with, the Court will dismiss plaintiff's claims against all individual defendants, as these merge with his claims against the District. Next, the Court will dismiss Mr. Gebretsadike's Title VI and DCHRA discrimination and retaliation claims for failure to state a claim. The Court will also dismiss his constitutional claims because he did not adequately allege municipal liability. Finally, the Court will grant summary judgment to the District on the tort claims because Mr. Gebretsadike failed to comply with the notice requirement of D.C. Code § 12–309.

**A. The Court Will Dismiss the Claims Against Individual Defendants**

The Court concludes that Mr. Gebretsadike has sued the individual defendants in their official, not personal, capacities. For that reason, the claims against these defendants merge with the claims against the District and will be dismissed.

**1. Defendants Are Sued in Their Official Capacities**

The course of proceedings indicates that Mr. Gebretsadike's claims are against the defendants in their official capacities.

A government employee subject to civil suit can only be found personally liable for damages if sued in their "individual (personal) capacity." *Daskalea v. District of Columbia*, 227 F.3d 433, 447 (D.C. Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). When a plaintiff does not explain whether a defendant is sued in their individual or official capacity, courts look to the "course of proceedings," other indications aside from explicit designations in the plaintiff's filings, to determine the nature of the suit. *Graham*, 473 U.S. at 167 n.14; *see also Brandon v. Holt*, 469 U.S. 464, 469–470 (1985) (finding a defendant was sued in their official capacity based in part on language in the plaintiff's response to a summary judgment motion). When the plaintiff does not formally name a defendant in their individual capacity, that indicates that the plaintiff has pleaded an official capacity rather than an individual capacity claim. *See*

*Wilson v. United States*, No. 1:22-cv-03639 (RCL), 2024 WL 756804, at *7 (D.D.C. Feb. 23, 2024) (Lamberth, J.).

Although the Amended Complaint does not expressly specify the capacity in which the individual defendants are sued, the course of proceedings indicates that Mr. Gebretsadike is proceeding against the defendants in their official capacities. Most significantly, the original Complaint explicitly states the employees are being sued officially; this designation was removed without comment in the Amended Complaint. *Compare* Compl. 1, *with* Am. Compl. 1. Moreover, the Amended Complaint repeatedly notes that  the defendants "act[ed] . . . in their capacity as District of Columbia officials" and "within the scope of their official duties." *See* Am. Compl. 44; *see also id.* 41, 45.

The course of proceedings therefore demonstrates the action is against the individual defendants in their official capacities.

## 2.  The Court Will Dismiss the Claims Against the Individual Defendants

Since the individual defendants are sued in their official capacities, the claims against them merge with those against the District. The Court will therefore dismiss the claims against the individual defendants.

"[N]o requirement" exists that claims against defendants in their official capacities must be dismissed if the District is sued simultaneously. *Owens v. District of Columbia*, 631 F. Supp. 2d 48, 54 (D.D.C. 2009). But "[f]or the sake of judicial economy, official capacity claims against the employees are generally held to 'merge' into the claims against the employer." *Jones v. District of Columbia*, 346 F. Supp. 2d 25, 40 (D.D.C. 2004) (Lamberth, J.), *partially rev'd on other grounds*, 429 F.3d 276 (D.C. Cir. 2005). As for constitutional claims, "a section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against

the municipality itself." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). For that reason, "district courts in this Circuit routinely dismiss [§ 1983] claims brought against District officials in their official capacities where such claims are duplicative of claims brought against the District itself." *Jones v. Quintana*, 658 F. Supp. 2d 183, 195 (D.D.C. 2009).  Here, Mr. Gebretsadike's claims against the officials are all duplicative of his claims against the District, since each claim is lodged against both the individual defendants and the District.

The Court thus concludes that Mr. Gebretsadike's official capacity claims against the individual defendants merge with his claims against the District itself. It will accordingly dismiss the claims against the individual defendants.

### B.  The Court Will Dismiss Plaintiff's Title VI and DCHRA Discrimination and Retaliation Claims for Failure to State a Claim

The Court will dismiss Mr. Gebretsadike's Title VI and DCHRA discrimination claims for failure to adequately plead discriminatory intent.  And it will dismiss his Title VI and DCHRA retaliation claims because he did not sufficiently allege causation.

### 1.  The Court Will Dismiss Plaintiff's Discrimination Claims (Counts 1 and 3)

The Court will grant the District's motion to dismiss Mr. Gebretsadike's Title VI and DCHRA discrimination claims because Mr. Gebretsadike failed to adequately allege discriminatory intent.

Title VI provides that "[n]o person in the United States shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The District does not contest that Title VI applies to its actions. Mot. to Dismiss 17–18. Similarly, the DCHRA prohibits employers in the District from "discriminat[ing] against any individual, with respect to his or her[] compensation, terms, conditions, or privileges of

employment, . . . or otherwise adversely affect[ing] his or her[] status as an employee"[5] "based upon [their] . . . national origin." D.C. Code §§ 2–1402.11(a), (a)(1)(A).

Title VI and DCHRA claims are each analyzed according to the standards of Title VII. *See, e.g.*, *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 78 (D.D.C. 2003) (Lamberth, J.); *see also Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) ("We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims under the federal anti-discrimination laws."). Such claims require that the injury result from *intentional discrimination* by the defendant, rather than reflect a disparate impact of otherwise equitable treatment. *Chandamuri*, 274 F. Supp. 2d at 82; *Gebretsadike*, 2023 WL 2708822, at *4. As in other contexts, a Title VII plaintiff has an "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

Mr. Gebretsadike's discrimination claims fail because he has not plausibly alleged that the actions of DFHV were motivated by discriminatory intent.  His first and third counts allege intentional national origin discrimination by DFHV. Am. Compl. 21–23, 25–26. The crux of his claims is that because of Mr. Gebretsadike's status as an Ethiopian immigrant, DFHV suspended him from the DTS system and directed employees to "slur" him. *Id.* What is missing, however, is any non-conclusory allegation that behind his suspension lay discriminatory intent. Instead, Mr. Gebretsadike simply recites the conclusory statement that the District "intentionally discriminated against [him] on account of his national origin," Am. Compl. 22, 25, and

---

[5] Independent contractors, such as taxi drivers, are considered employees for the purposes of the DCHRA. *See* D.C. Code. § 2–1401.02(9)(A) (2024).

"exert[ed] . . . discriminatory and retaliatory animus," *id.* ¶ 31. But he does not provide any "factual basis for that conclusion." *Gebretsadike*, 2023 WL 2708822, at *5. Granted, he states that he was subjected to "slurs." Am. Compl. ¶¶ 10, 19. But he offers no details. The Court is left with no basis to find that the Amended Complaint alleges comments that were true "slurs" or that truly related to his national origin. Although his opposition further gestures toward DFHV's animus, Pl.'s Opp'n 15–17, "a complaint may not be amended by the briefs in opposition to a motion to dismiss," *Stewart v. Kendall*, 578 F. Supp. 3d 18, 24 n.3 (D.D.C. 2022) (Lamberth, J.) (internal citation and quotation omitted).

"In short, stating simply that there *was* 'discriminatory animus,' is not enough to 'nudge[] [Gebretsadike's] claims across the line from conceivable to plausible.'" *Gebretsadike*, 2023 WL 2708822, at *5 (alterations in original) (citations omitted) (quoting *Twombly*, 550 U.S. at 570). The discrimination claims must be dismissed.

### 2. The Court Will Dismiss Plaintiff's Retaliation Claims (Counts 2 and 4)

The Court will also dismiss Mr. Gebretsadike's Title VI and DCHRA retaliation claims (Counts 2 and 4) because although Mr. Gebretsadike has adequately pleaded that he engaged in protected activity and was subjected to adverse action, he has not sufficiently alleged that the two share a causal link.

As with the discrimination claims discussed above, both Title VI and DCHRA retaliation claims follow the same Title VII analysis. *See Chandamuri*, 274 F. Supp. 2d at 78. This Court has previously recognized the existence of a private right of action for retaliation under Title VI, although the Supreme Court and D.C. Circuit have not yet considered the matter. *See id.* at 83. Similarly, the DCHRA creates a civil cause of action against anyone who "retaliate[s] against, or interfere[s] with any person . . . in the exercise or enjoyment of any right granted or protected under this chapter." D.C. Code § 2–1402.61(a) (2024).

To survive a motion to dismiss, a plaintiff asserting a retaliation claim need not establish a prima facie case. *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015)). But the plaintiff must nonetheless "allege 'facts that, if true, would establish the elements of each claim.'" *Id.* (quoting *Tressler v. Nat'l R.R. Passenger Corp.*, 819 F. Supp. 2d 1, 5 (D.D.C. 2011)); *see also Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (observing that to survive a Rule 12(b)(6) motion, a plaintiff must have "alleged facts that, taken as true, render his claim of retaliation plausible"). The Court may therefore "explore the plaintiff's prima facie case at the dismissal stage to determine 'whether the plaintiff can ever meet his initial burden to establish a prima facie case for Title VII discrimination.'" *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 281 (D.D.C. 2011) (quoting *Rattigan v. Gonzales*, 503 F.Supp.2d 56, 75 (D.D.C. 2007) (Lamberth, J.)).

To establish a prima facie claim for retaliation, Mr. Gebretsadike would need to allege "(1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity." *Chandamuri*, 274 F. Supp. 2d at 84 (citing *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000)). To satisfy the protected activity element, Mr. Gebretsadike would only need to establish that "he had a reasonable good faith belief that the practice he opposed was unlawful under Title VI." *Id*. An adverse action is one that "well might have 'dissuaded a reasonable [person] from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A causal link exists where the "adverse action would not have occurred 'but for' the protected activity." *Chandamuri*, 274 F. Supp. 2d at 84. Temporal proximity between the protected activity and the

adverse action can by itself imply causation. But such proximity must be "very close," and "[a]ction taken . . . 20 months later suggests, by itself, no causality at all." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (quotations omitted); *see also Chandamuri*, 274 F. Supp. 2d at 84–85 (dismissing DCHRA and Title VI retaliation claims where the alleged adverse action occurred more than a year after the plaintiff's protected activity).

Here, Counts Two and Four, respectively, of the Amended Complaint charge the District with retaliation under Title VI and the DCHRA. Am. Compl. 23, 26. Mr. Gebretsadike alleges he was suspended from the DTS system and was subject to taxi impoundment for "engag[ing] in statutorily protected activities by opposing treatment by District of Columbia employees that he reasonably believed constituted unlawful discrimination." *Id.* According to Mr. Gebretsadike, the retaliation was not in response to his attempts to resolve his DTS issues with DFHV. Instead, it was a reprisal for his complaints and lawsuit about not receiving pandemic unemployment assistance. Pl.'s Opp'n 21; *see also Gebretsadike*, 2023 WL 2708822, at *1–2 (discussing the background of the denial of such assistance, allegedly also due to national origin discrimination). The District allegedly retaliated by suspending him from the DTS system and impounding his taxi. Am. Compl. 23, 27.

Although Mr. Gebretsadike has adequately pleaded that he engaged in protected activity and experienced adverse action, he has failed to bridge the protected activity and adverse action with a causal link. Mr. Gebretsadike plausibly alleges that he engaged in protected activity: the complaints regarding pandemic unemployment assistance he had brought to the Department of Employment Services ("DOES") and the prior lawsuit. Am. Compl. 23–24; Pl.'s Opp'n 21. Indeed, this Court has already held that those exact actions were protected. *See Gebretsadike*, 2023 WL 2708822, at *6. The District suspending him from the DTS system and seizing his taxi amounts to

adverse action because these steps "well might have" dissuaded a reasonable person from further complaints against the District. *White*, 548 U.S. at 68 (quotations omitted).

Nonetheless, the Amended Complaint does not plausibly allege facts that, if true, would establish a causal link between his protests to DOES or previous suit and these adverse actions. Mr. Gebretsadike states that "a causal connection existed." Am. Compl. 24, 27. But beyond these conclusory protestations, he does not provide any facts indicating that the District would not have suspended him from the DTS system or seized his taxi but for his complaints regarding unemployment assistance. Not only does Mr. Gebretsadike fail to provide a factual basis for his conclusion that DFHV, a separate department from DOES, sought to retaliate against him, he does not allege facts indicating that DFHV was even aware of his unemployment complaints or pending lawsuit. Though the "District of Columbia is a single legal entity," Pl.'s Opp'n 21, the right hand may not always know the doings of the left hand. This case is distinguishable from Mr. Gebretsadike's other civil action, in which the Court held that Mr. Gebretsadike had plausibly alleged his retaliation claim, including the causation element. *See Gebretsadike*, 2023 WL 2708822, at *7. In that case, the Court found it "plausible that Gebretsadike could prove that those involved in the alleged adverse action knew of his complaints." *Id.* But in that case, Mr. Gebretsadike alleged that the adverse action was perpetrated by DOES, the very agency to which he had complained—not an entirely separate component of the District. *Id.*

Moreover, the lack of temporal proximity between the protected acts and the supposed retaliation cuts against an inference of causation. Mr. Gebretsadike's complaints regarding the unemployment assistance occurred in April through June of 2020. *See Gebretsadike*, 2023 WL 2708822 at *1–2. The alleged suspension and racial harassment at DFHV did not begin until "the beginning of 2022," at least nineteen months later. Am. Compl. ¶ 5. This gap recalls *Breeden* and

*Chandamuri*, where delays of twenty months and more than a year, respectively, were insufficient to show a causal connection absent any other supporting allegations. *See Breeden*, 532 U.S. at 274; *Chandamuri*, 273–74 F. Supp. 2d at 84–85. Accordingly, in light of the delay between the protected acts and alleged retaliation and the absence of a factual link, the Court concludes that Mr. Gebretsadike has not sufficiently alleged causation.

Mr. Gebretsadike's failure to allege facts that, if true, would plausibly allege causation dooms his retaliation claims, which the Court will accordingly dismiss for failure to state a claim.

### C. The Court Will Dismiss Plaintiff's Constitutional Claims for Failure to Adequately Plead Municipal Liability (Counts 5–15)

Mr. Gebretsadike has failed to adequately plead municipal liability under Section 1983 for any of his constitutional claims because he has not plausibly alleged a custom or policy set by the District that caused the purported constitutional violations.[6] The Court will therefore dismiss Counts Five through Fifteen.

Under *Monell v. Department of Social Service*s, 436 U.S. 658 (1978), a municipality such as the District of Columbia may be liable for the conduct of its employees under 42 U.S.C. § 1983. *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1135–36 (D.C. Cir. 2023) (citing *Monell*, 436 U.S. at 692). However, municipalities "cannot be held vicariously liable for their employees' actions." *Frederick Douglass Found.*, 82 F.4th at 1148 (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Instead, the violation must occur pursuant to official policy or custom. *Id.* (citing *Monell*, 436 U.S. at 694).

A plaintiff may allege a municipal custom or policy based on any of four theories: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a

---

[6] These include claims for First Amendment retaliation, Fourth Amendment unreasonable seizure, Fifth Amendment procedural and substantive Due Process violations, Fifth Amendment equal protection violations, and Eighth Amendment excessive fines. Am. Compl. 28–38.

policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Blue v. District of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

No matter how liberally one reads Mr. Gebretsadike's Amended Complaint, it fails to adequately plead any of the three theories advanced by Mr. Gebretsadike: explicit policy, action by a policy maker, and deliberate indifference. The Court therefore concludes that whether or not Mr. Gebretsadike has stated a claim for any predicate constitutional violations, he has failed to establish *Monell* liability.

First, Mr. Gebretsadike has not sufficiently alleged an explicit unconstitutional policy by the District.  Rather than plead "some factual basis for the allegation of a municipal policy or custom," *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996), Mr. Gebretsadike has simply repeated that "[t]hese infirmities involve a policy, custom, and/or practice of" the defendants. *See* Am. Compl. at 19, 28–38. He has also asserted that his purported injuries were the "result of [DFHV's] subjective ill-will towards the taxicab and immigrant taxicab operators" and that the evidence of this supposed policy is "a matter of public fact" as evinced by the current DFHV taxi regulations—although he does not cite to any specific regulation. Am. Compl. 14, 19. These are precisely the sort of "'naked assertion[s]' devoid of 'further factual enhancement,'" that the Court need not accept as true at the motion to dismiss stage.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Mr. Gebretsadike has therefore failed to adequately allege this theory of municipal liability.

16

Second, Mr. Gebretsadike has failed to adequately allege action by a final policy maker. Once a court establishes based on state law that a person counts as a policy maker, his or her actions may trigger municipal liability only if the official "demonstrated 'deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision.'" *Blue*, 811 F.3d at 19 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)).  But even assuming that Director Do was a final policy maker, Mr. Gebretsadike has not adequately alleged that Director Do acted with deliberate indifference to the risk his decision would violate Mr. Gebretsadike's constitutional or statutory rights.  Mr. Gebretsadike has alleged only that Director Do informed him that he was looking into the matter of Mr. Gebretsadike's suspension but that the problem was not resolved.  Am. Compl. ¶ 12. Although Mr. Gebretsadike notes that he contacted Director Do for assistance with the DTS problem, there is no indication that this letter mentioned any national origin harassment. Mr. Gebretsadike has therefore not alleged that Director Do was alerted to the alleged constitutional and statutory violations being perpetrated by his agency. It is far from clear that Director Do acted with deliberate indifference to the risk that  his decisions would result in violations of Mr. Gebretsadike's rights.

Third, Mr. Gebretsadike has not adequately alleged that the District's failure to respond to a need amounted to deliberate indifference to the risk that inaction would result in constitutional violations. A municipality has acted with deliberate indifference when it "knew or should have known of the risk of constitutional violations" but failed to respond. *Baker*, 326 F.3d at 1307. Here, Mr. Gebretsadike  avers that the District acted "intentionally and/or recklessly and with deliberate disregard" to his rights and that he went to DFHV for help but was turned away. Am. Compl. ¶ 15. But he does not allege that the District was aware of the risk of constitutional violations. Again, Mr. Gebretsadike has not suggested that his letter to Director Do alerted him to the alleged national

origin harassment of Mr. Gebretsadike. Therefore, Mr. Gebretsadike has not plausibly alleged that the District acted with deliberate indifference to potential constitutional violations.

Mr. Gebretsadike's theories of municipal liability fail.  His constitutional claims must accordingly be dismissed.

### D.  The Court Will Grant Summary Judgment to Defendants on the Tort Claims

Finally, the Court will grant defendants summary judgment on Mr. Gebretsadike's tort claims (Counts Sixteen through Twenty-Two) because Mr. Gebretsadike violated the notice requirements established by  D.C. Code § 12–309. The Court agrees that this notice provision applies to Mr. Gebretsadike's tort claims because he is seeking unliquidated damages on those counts.  And it agrees that summary judgment should be granted for defendants on these counts because Mr. Gebretsadike failed to provide the District sufficiently detailed notice.

### 1.  D.C. Code § 12–309

D.C. Code § 12-309 provides in relevant part that:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12–309(a) (2024).

In other words, for a claim of unliquidated damages to proceed against the District, providing the requisite notice is mandatory. Damages are considered liquidated if they constitute an "easily ascertainable sum certain" at the time the injury arose. *District of Columbia v. Campbell*, 580 A.2d 1295, 1300 (D.C. 1990) (quoting *Hartford Accident & Indem. Co. v. District of Columbia*, 441 A.2d 969, 974 (D.C. 1982)). Generally, tort claims "are considered unliquidated." *Snowder v. District of Columbia*, 949 A.2d 590, 600 (D.C. 2008). However, claims for back pay,

the amounts of which are more easily ascertainable, may be considered liquidated. *Elzeneiny v. District of Columbia*, 699 F. Supp. 2d 31, 34 (D.D.C. 2010).

The notice's sufficiency is a question of law for the Court to decide. *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995). Although certain aspects of the statute are to be strictly construed, the sufficiency of the notice's contents should be viewed with "greater liberality." *Id*. To give notice of the time of the injury, the plaintiff need only provide an "approximate estimate." *Id.* at 1231 (finding that the notice satisfied the time requirement even though it got the date wrong by one day). The cause of the injury is adequately stated if the notice "recites facts from which it could be reasonably anticipated that a claim against the District might arise." *Pitts v. District of Columbia*, 391 A.2d 803, 809 (D.C. 1978). To satisfy the circumstances requirement, "precise exactness is not absolutely essential" regarding the "details" of the events. *Pitts*, 391 A.2d at 807 (quoting *Hurd v. District of Columbia*, 106 A.2d 702, 705 (D.C. 1954)). Yet "the circumstances must be detailed enough for the District to conduct a prompt, properly focused investigation of the claim." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981).

### 2. Since Plaintiff Failed to Provide Adequate Notice for His Tort Claims, the Court Will Grant Summary Judgment on Counts Sixteen Through Twenty-Two

The Court concludes that Mr. Gebretsadike's tort claims (Counts Sixteen through Twenty-Two) are within the scope of § 12–309 because they seek unliquidated damages. And even assuming Mr. Gebretsadike's notice was timely, it was still deficient because of its lack of specificity concerning the time, place, cause, and circumstances of the injury.

Since Mr. Gebretsadike's tort claims are for unliquidated damages, they are subject to the notice requirement of § 12–309. Tort claims are generally considered unliquidated. *Snowder*, 949 A.2d at 600. Mr. Gebretsadike's are no exception. That is because the damages he seeks do not amount to "an easily ascertainable sum certain." *Campbell*, 580 A.2d at 1300. Mr. Gebretsadike

himself characterized his compensatory damages as "an amount to be proven at trial."  Compl. 46. And his letter to the District acknowledges that his claims are for "unliquidated damages." Gebretsadike Letter. His belated effort to recast his damages as liquidated because he seeks "back pay or lost income," Pl.'s Opp'n 13, is unavailing. Mr. Gebretsadike acknowledges that because he was not a "fixed-wage" worker, the money he allegedly lost from reduced taxi business "is not something [he] can simply numerate [sic.] it in the Complaint" but rather something that "demands determination." *Id.* at 13–14.   The Court therefore has little difficulty concluding that Mr. Gebretsadike's tort claims are for unliquidated damages—and are therefore subject to § 12–309.

Mr. Gebretsadike's letter was not detailed enough to comply with that provision.[7]  It states that Mr. Gebretsadike was "blocked out of the digital system" in his taxi and had attempted to resolve the issue with DFHV.  *Id.*   It explains that DFHV had failed to address the problem, despite his outreach to its director on April 14, 2022.   *Id.*   It concludes that Mr. Gebretsadike was "unlawfully deprived by DFHV and its agents" as a result of "the continued discriminatory animuses [sic.] and some form of retaliatories [sic.] and conspiracies going on against me by the district or its agencies," resulting in his loss of "living income" putting him "on [sic.] bad situation." *Id.* Finally, he stated that the District had violated his—unspecified— "constitutional and statutory rights." *Id.*

---

[7] The parties disagree about whether Mr. Gebretsadike actually submitted notice of his suit.  *Compare* Decl. of Lana Craven 3, Ex. A to Defs.' Mot. to Dismiss, ECF No. 14-3, *with* Aff. of Awoke Gebretsadike 2, Ex. A to Pl.'s Opp'n to MTD, ECF No. 19-1.  But that is not a genuine dispute of *material* fact because, as discussed below, even if Mr. Gebretsadike submitted his letter, it did not provide adequate notice to the District. *See Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59, 72 (D.D.C. 2011) ("[T]he dispute must pertain to a 'material' fact, and therefore '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). For the same reason, there is no genuine dispute of material fact as to whether the notice was submitted within six months of the injury or damage being sustained.

Even considered generously, the letter fails to provide "the approximate time, place, cause, and circumstances of the injury or damage."  D.C. Code § 12–309(a).  Despite noting the date of Plaintiff's contact with Mr. Do, the letter does not indicate either the date Mr. Gebretsadike was first locked out of the system or the dates he went to the DFHV office for help.  And although the letter provides Mr. Gebretsadike's Face ID number, it does not inform the District what taxi company or companies he works for, which DTS product he uses, or the names of the DFHV employees who allegedly harmed him.  Most importantly, it is silent on the factual basis for concluding that Mr. Gebretsadike was the victim of discrimination, retaliation, or conspiracy. Unlike in *Wharton*, where the notice provided a date incorrect by one day, the complete lack of a timeframe would have made it difficult for the District to investigate the alleged incidents. *See* 666 A.2d at 1231. The letter's factual impoverishment means the notice was simply not "detailed enough for the District to conduct a prompt, properly focused investigation of the claim." *Washington*, 429 A.2d at 1366.

Since the letter did not contain the approximate details required by § 12–309, the District is entitled to summary judgment on all of Mr. Gebretsadike's tort claims.[8]

## IV. CONCLUSION

For the foregoing reasons, defendants' motion is **GRANTED**. The Court will **GRANT** summary judgment to the District on all tort claims, Counts Sixteen through Twenty-Two. It will **DISMISS WITH PREJUDICE**[9] Counts One through Fifteen as to District employees in their

---

[8] Whether Mr. Gebretsadike's tort claims arise out of the encounter with Mr. Campbell or Mr. Gebretsadike's earlier difficulties, they meet the same fate. The letter could not have provided sufficient notice to the District about Plaintiff's alleged encounter with Mr. Campbell on June 20, 2023, as it was dated nearly a year prior. Am. Compl. ¶¶ 17. And Mr. Gebretsadike does not allege he sent another notice regarding his taxi's impoundment. *Id.*

[9] As the claims against individuals in their official capacity are redundant, and there are no facts that the plaintiff could allege that may "possibly cure the deficiency," dismissal with prejudice is an appropriate measure. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see also Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 29

official capacity. Finally, the Court will **DISMISS WITHOUT PREJUDICE**[10] Counts One

through Fifteen as to the District. A separate Order consistent with this Memorandum Opinion

shall issue.

Date: _____7 – 3 . 24_____

Royce C. Lamberth
United States District Judge

---

(D.D.C. 2013) (Lamberth, C.J.) (dismissing with prejudice official capacity claims against a District employee because the District is also a named defendant).

[10] These claims are dismissed without prejudice because "dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) (quotations omitted) (quoting *Firestone*, 76 F.3d at 1209). Mr. Gebretsadike could potentially cure any deficiencies by alleging facts demonstrating a District policy for the § 1983 claims, a discriminatory purpose for the discrimination claims, or a causal link with regard to the retaliation claims.